Our next case scheduled this morning is 523.1309 Sorento Parents Committee of Ten et al. v. Regional Board of School Trustees for Bond, Christian, Effingham, Fayette, & Montgomery Counties Council ready on that case? And Mr. Kansas? And are you also arguing it? I'm not arguing it. He's all in favor of it. All right. Thank you. You're going to proceed, Ms. Farron? Yes. You may proceed. Please state your name for the record also. Michelle Farron. May it please the Court, Council. My name is Michelle Farron and I represent the appellates. This case is about a small group of parents, along with 73% of the community, who filed a petition to detach from Bond County Community Unit School District No. 2 and annex into Mount Olive Community School District No. 5. They filed a petition with the Regional Board of School Trustees, who denied the request, claiming that they did not prove a significant direct educational benefit. Before the Court today is two issues. The first issue is, did the trial court err in finding that the Regional Board of School Trustees' decision denying the appellants' annexation was not against the weight of the evidence? The second issue is whether the Regional Board of School Trustees violated the Illinois Administrative Procedural Act and Administrative Review Law when it failed to articulate the finding of fact or conclusion of law. The standard of review in this case, the Court reviews the Regional Board of School Trustees' decision and the record on appeal. It does not review the circuit court's decision. An administrative agency's findings and conclusion of law and question of fact are deemed to be prima facie true and correct. However, Illinois courts have long cautioned that this rule does not relieve the court of the important duty to examine the evidence in an impartial manner and set aside the court a judgment which is unsupported in fact. There's two issues. The first issue on the Administrative Review Law and Illinois Procedural Act. This is an issue regarding a question of law. Therefore, this should be reviewed on a de novo basis. The second one about the significant direct educational benefit is a mixed question of law and fact. The Court should apply the clearly erroneous standard of review. The Court may only consider the facts and evidence presented to the Regional Board of School Trustees and on the basis that it denied the petition. In 2016, the Illinois legislature changed the law regarding annexation. They made it more difficult. Now the appellants or parents need to prove first that there is a significant direct educational benefit and then they can look into the community of interest. There's not a lot of cases so far on the significant direct educational benefit. But the ones that have been decided have stated that should be broadly interpreted. In Shepherd v. Regional Board of School Trustees, they stated that educational welfare should be broadly interpreted. It's not just through the improved educational programs and facilities. In Burrough v. Regional School of Trustees, the Court found that it should be broadly interpreted and look at factors such as convenience, continuity, parental preference, distance, the identity with the annexed area, the difference in the curriculum and facilities, state recognition, the tax impact, and participation. Here, the community members submitted affidavits and testimony to prove the significant direct educational benefit. The parents met with the Mount Olive School District. They hired an expert, Dr. Epley, who has studied for 20 years rural school annexations, to testify at the hearing. In contrast, Vaughn County had two people speak on its behalf. The first one who testified on their behalf was the superintendent, Dr. Rosalie Olson, whose information about Mount Olive was based on the website, he stated. And the other one who testified just as a public comment was the school board president. They did not really refute the facts, but the parents proved the direct educational benefit by showing different things, such as the bus commute. The Illinois State Board of Education recommends that a child should only be on the bus one hour per way. It's recommended. In this case, the students are on the bus two hours each way. And these are grade school students. Dr. Olson and Ms. Portman, the school board president, they just said that the situation was unfortunate. The parents then went to Mount Olive to talk about the bus ride, if they were to annex. They hired Dr. Epley, who gave testimony. She stated that long bus rides prove a significant direct educational benefit because long bus rides equal less downtime, less participation in extracurriculars, which could affect college applications, extended school days, impacting academic performance, less sleep, decreased education, decreased educational achievement, and an increase in the cost of transportation. Again, this was unrebutted. This is a direct educational benefit, and that was proven by parents at the hearing. Another educational benefit that the parents testified about was the class size. Mount Olive is three times smaller than the Bond County School District. The parents testified about their students not receiving specialized education from their teacher and staff. Dr. Epley again testified at the hearing. She stated that the smaller class sizes for the students could have better attendance, better behavior, and increased grade level. If they increase math, increase the class size by 10 students, it's easier for the students to fall through the cracks and decrease math scores. The parents also spoke with Dr. Mary Teegan from the University of Vermont and Dr. Lynn Hatfield from Illinois State University. All of these individuals stated that the larger schools devoted more resources to secondary and non-essential activities and less to the students. Additionally, parents who had students with IEPs talked about the larger class sizes and how their students were struggling more in these larger class sizes versus the smaller class sizes. At the hearing, Dr. Olsen made a comment that bigger schools might have more opportunities for the students, but he didn't explain the opportunities in contrast to all the parents talking about the benefits and Dr. Epley of the smaller class sizes. Another benefit that was mentioned briefly by the parents was the vocational college classes at Mount Olive School District. Mount Olive were two free universities, St. Louis University, Lincoln Land Community College, and Southwest University Community College. The Land of Lincoln Community College doesn't have any costs for these students with their dual credit. SLU has a reduced cost for these students. And Southwest Illinois Community College, they have vocational classes. Vaughn County spoke about the dual credits at Cascadia College, but I mean that's one college versus three with vocational training included. There was also some discussion about asbestos because Vaughn County was having the asbestos renovations at the time and this is more times students are in private classrooms with asbestos while Mount Olive didn't have asbestos. Another benefit the parents talked about were extracurriculars. And I know this is part of a whole child argument, but a student's participation in extracurriculars has been proven by the National Center for Education who stated that there's increased attendance, decreased behavioral issues, and Bill did say that extracurriculars can be considered. Parents spoke with Mount Olive about their opportunities. Because of the bus rides, there are not many opportunities for these students to stay after school because they have to catch a bus for another two hours going home. The parents asked Dr. Olson if any accommodations could be made where another bus could be taken so these kids could do extracurricular activities. He said no. Mount Olive talked to them about the school size allowing more opportunities since they're smaller. One parent, Amy Baker, her daughter tried out for volleyball at Vaughn County. She did not make it. The class sizes, like I said, are three times bigger. She then transferred to Mount Olive because of social and emotional issues and she was devastated not making the volleyball team. And Mount Olive could have had her on this team except for since she transferred, instead of being annexed, she was not eligible that year. Dr. Olson and Ms. Workman, they did state Vaughn County had more extracurricular activities than Mount Olive. So there were some more opportunities, but they didn't speak about what opportunities were there. And again, Dr. Olson, he was comparing it based on Mount Olive's website, which he said he wasn't sure if it was up-to-date or not. He did have knowledge about Vaughn County, though. And then another direct educational benefit the parents approved at the hearing was parental involvement and a preference. In Burrell, the court found the factors delineated in 105 ILCS 5-7-6 are not exhaustive and other factors should be considered in determining the direct educational welfare of the children, such as the factors of convenience to the parents and the children. Here, parents came and testified. Mount Olive is closer to many of their works, so they can actually go to Mount Olive to help participate in their students' education. Additionally, their students with the best times are not always able to do extracurriculars, so the parents are not getting involved in that. Another thing which, again, 73% of the community here is in support of this annexation. It's not just parents with kids, but 73% of the entire community to be annexed is looking for this annexation. And then, finally, another benefit that the parents approved at the hearing was about the emotional support that Mount Olive offered students. There was testimony about some hostility at Baum County towards these students after Sorrento closed. They said the closure of the school was similar to the loss of another student. However, they only provided about two days of remote therapists. The parents spoke with Mount Olive, and Amy Baker, the one whose daughter transferred, spoke about how her daughter was doing better emotionally at Mount Olive. But Mount Olive has a social-emotional curriculum which could help these students, and they have therapists there. This is on the record. It was not rebutted. For these reasons, I believe the direct educational benefit was proven by the parents at the hearing. Another issue that was brought up is regarding the order itself. The Illinois Administrative Procedure Act states that finding of facts at court in the statutory language shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. Administrative review law states that judicial review of an administrative decision shall be limited to the agency's findings of fact and conclusions of law. The Illinois Supreme Court has stated that the grounds for an agency's action must be clearly disclosed and adequately sustained. While an agency may not make findings on each evidentiary fact or claim, its findings must be specific enough to permit an intelligent review of the decision. Here, there was a six-page decision issued. The first three pages stated the fact that petition was filed, the notification of the hearing, and to the Board of Education, the date of the hearing, and the identity of the hearing officer. The last three pages were the legal description of the property. On the third page, there was just a brief paragraph that stated that the parents brought this claim in support and Down County contested the petition. And that the Board of Trustees, having heard and considered the testimony, and being fully advised of the premises, denied the petition because a direct significant educational benefit to the petitioner's children was not proven. And based on the first finding in keeping with Illinois law, the Regional Board of Trustees is unable to consider the community of interest of the petitioners and their children and the effect it would have on the whole child. There was no finding of facts there. So how they determined there was no direct educational benefit without any findings of facts, we believe the parents should know the reason for the denial. At the class size, there was some evidence that Bond County had a student-to-teacher ratio of 15 to 1 and Mount Olive was 13 to 1. Was there other evidence besides those findings? You mentioned that as one of the factors you thought was in favor of compliance, the class size. What numbers were you using for that? On the record, they stated, and I do admit I was not at the Regional Board. It was a different council at the time. But in reviewing the record, it was stated by the parents, and Martin County was three times bigger. After speaking with Mount Olive, they gave that number. Is that based on how did they come up with three times bigger? I heard you say that earlier, but I didn't see anything. Speaking with the Mount Olive superintendent, who they spoke with and met with many times in the School of Trustees, they looked at the numbers comparatively with them. Melissa Gomarek, one of the parents, spoke with Mount Olive about the class size of the school. And she said three times bigger. When you talk about class size, you have a specific number, like 15 to 1 or 12 to 1 or 18 to 1. I'm just saying generically three times bigger. There's not hard, fast numbers for us to go off of that. Was there some other? In my notes, I have 15 to 1 for Bond and 13 to 1 for Mount Olive. Did you have any other numbers besides that? I do not. As I understand it, your main argument is class size, more welcoming of Mount Olive, making new students feel more welcome, and the bus ride? The bus ride and also the ability for friends and involvements, extracurriculars. Was that 15 minutes? I never heard that. Somebody was arguing 15 minutes one way for the Bond, I guess, or two hours. It was 15 minutes to Mount Olive. Is that what I heard? Direct numbers have not fully been stated. Mount Olive said that they would have more of a direct number because of the smaller school size. They would be able to provide a more direct bus ride for these students. There was some thought that it could be 15 minutes or closer, but nothing was definite. I think we have an opportunity for a vote on a moment. Mr. Pancis, are you ready to proceed? Yes, I am. If you would also state your name for the record, please. Of course. Thank you, Your Honors. My name is Eugene Pancis, Jr. If you may, please support counsel. Could you speak up? Oh, I'm sorry. Sure, certainly. I usually don't get that problem. I'm bellowing. My name is Eugene Pancis. I'm here today on behalf of the EPLI, Bond County Community School District No. 2. They are the district from which approximately $18 million of assessed valuation would be taken if the petition had been granted. Before I forget, let's go back to the bus time. What is the bus time from Sorrento to Sorrento, and what is the bus time to the other? Justice, I was going to put aside my prepared arguments and start off by addressing that. I'm happy you did. There is no evidence. What you will see throughout the transcript, we've got a lot of people in public hearings who are stating things. It was in a big gymnasium. People are coming in and stating things. Then the hearing starts, and there were some parties presented, but the regional board allowed no objections over foundation, over any other qualification of who was, quote, unquote, a witness. Well, what is the mileage? The mileage was never provided. So you can't take judicial notice of mileage? No. I don't think you can. And the problem we get, the gist of the argument that was presented was that it's very long to take these kids from the Sorrento area to the new Bond County attendance center they'd be attending. But there was no evidence that said how long it would be to take them to Sorrento. They were complaining about two hours but had nothing to compare it to, except there was one member of the public in this auditorium, and it's caught on the transcription. And he says, it's about the same. So someone in the crowd screamed out, it's about the same. So you're coming to us then and arguing that we don't even have any idea what the distance is or how long it takes the bus to get there. No, but counsel admitted. So you're in agreement with nothing about bus time. Is that what you're saying? Yes, because I think counsel admitted they were about the same. And that triggers the 7-6. Counsel admitted, what do you mean? Yes, on the record, counsel stated the regional board asked questions about distance. Was there no objection? No, because the regional board would not permit objections. I made that objection in a motion in limine in motion to dismiss earlier. But the day of the hearing, the regional board precluded any objections. So you're suggesting then we probably should send it back to see what the mileage is. No, I don't think so. Because if we have no idea, what do we have to go on? Because I think the plaintiffs, the petitioners, failed to present that it was greater than 10 miles, therefore, by triggering this Court's decision in Ron. This Court noted that 7-6-I-3 says we can't consider mileage unless it's greater than 10 miles. Well, it's longer than, I mean, I would guess. The difference. I don't think so. Because we've got different geographic issues between those families going to Bond and going to Mount Olive. And the counsel admitted on the record that they were about the same. So I think that was a failure of the petitioners before the regional board to present that evidence. And that failure doesn't give them a second bite at the apple to address it. Their failure kicks them out of consideration under 7-6-I-3, in my opinion. We can't discuss distance and related timing issues because I think they're derivative. So that's my thought on transportation. Class size. Your Honor brought up class size. So I'll jump in and talk about that a little bit. There was testimony from the Bond County Superintendent that talked about comparative class sizes. And he stated that he was basing his testimony on many sources, one of which was WebSite. But it wasn't the only one. But if you look at the record, there are a couple of things in the record that give us a significant amount of insight into the distance issue. And let me quote my notes, please. As part of the preparations, the regional board pulled together documents from Bond County and from Mount Olive about class sizes and teacher sizes. And it's one of the exhibits each of them had. Now, Bond County objected. They provided some information but said the petition's kind of ambiguous. We can't really understand what property you're talking about. So subject to that, here's some of our information. And the record will show that Sorrento had 107 kids in pre-K-8. There were also 35 kids in the Sorrento area who were in high school. And Sorrento was only a K-8 grade. So if the property were moved to Mount Olive, it would entail 107 of the K-8 students who were at Sorrento plus an additional 35 in that area who would be going to Bond Council's high school but now are going to Mount Olive's. When we look at Mount Olive currently, their information indicated that they had 366 pre-K-8 students and 129 to 12 graders for a total of 486. It's possible. I think this is something the court can look at. If you're adding 142 kids to 486 who are currently at the Mount Olive School District, you're increasing enrollment by about 29, 30%. If you're doing that, everything about equality or better class sizes being smaller is out the window. You know, how is Mount Olive going to absorb a 30% increase in attendance? What are their class sizes going to do? And that's the problem with the petitioner's complaint. They like to throw us down rabbit holes. They'd say, class sizes are better. But, you know, that professor, when they're smaller, that professor admitted under questioning from the regional board that she was only presenting an academic study and had no information about the actual Sorrento or Mount Olive and Bond County schools. She also admitted when character, well, she didn't admit this part, but she admitted it was academic. Members of the regional board asked her directly, aren't these schools the same? You know, you're talking about small rural districts. We're all small and rural. It was one of the thought patterns and questions that the regional board had. So on top of all of this, Dr. Erson, Bond County superintendent, also did provide testimony that in his opinion, smaller isn't better. During the public comment, yes. The board never said any of this. No, they did not. Isn't that the issue? Why aren't they required to? No, I would argue. How do you distinguish this Violet case? Violet is, all right, Violet has been modified by another case, but I would respond to this by explaining that, let me turn you to the Duckett case. It says, when the entire record indicates that the board had considered applicable statutory standards, it's determined must be affirmed. But even more importantly, there's a case that we cite called Kimball-Dawson. And Kimball-Dawson says, unless a statute requires specific factual findings, an administrative agency is only required to provide a record and findings to permit orderly and efficient judicial review. It goes on to say, if the testimony at the administrative hearing is preserved in the record as it is or as it was in Kimball-Dawson, and as it is here, the reviewing court has sufficient grounds to examine the agency determination and specific fact findings are not required. And the statute, the school code provision in question, 7-6K, states only that after the regional board issues its determination, the regional superintendent within 30 days has to, and now I'm going to try to quote if my handwriting is legible to me, enter an order either granting or denying the petition. So the petition, or the 7-6K, does not require specific findings. And Kimball-Dawson says, unless a statute does so require, it's not a requirement. That's our argument. The threshold seems pretty low, though, to prove an educational benefit, because I was surprised to find there's a case, Carver v. Vaughn, Fayette, Effingham, 146 Illinois 2nd, 347, where it was found sufficient that the tennis player would be at a more competitive school. That was justification for... Your Honor, there have been 50, 60 years of detachment cases, and they're all over the place. I've been in front of regional boards, and it's hard to predict sometimes what happens, but that is a reported case. Carver does say that. But I think if you look at the legislative history and the changes, Shepard said there was a stark difference in the legislative change where we now must show a significant direct educational benefit. The Burr case says Shepard was correct. Now it must be significant. So to the extent these pre-2016 cases set forth a lower standard, perhaps, or were a little more deferential to the determinations of a regional board, I think they're outdated. I think they've been supplanted by a statute. And we need to look at, for example, your case in Roxanne, the Ron case, Shepard, and Burrall. I think those are cases that are exploring this new environment, but they're also indicating... I think counsel commented during her argument that the new laws made detachment tougher. She also brought up a lot of issues about, you know, things were unrebutted, things were not changed. One of the cases Shepard talks about, one of the newer cases, parental preference isn't something that the regional board must even consider. The regional board, if they're... Before they get to this community of interest test or whole child test, they have to find significant direct educational benefit, that which is direct. What do you believe our standard of review is in this case? I believe it's clearly erroneous because Shepard said the question. It was almost an identical issue of whether the regional board properly or improperly found significant direct educational benefit was clearly erroneous. It's a mixed question of law and fact. But playing off of Justice McKinney's question, if the board doesn't make any findings, they just say plaintiffs failed to meet their burden. I think there's a trial of fact. Now, as I'm standing here, do I wish they had? Of course I do because I could be talking about something else to you two or you three. But I think the truth of the matter truly is that this is not the standard and that the regional board is the trier of fact. They weigh the credibility of witnesses, whether sworn or not. They weigh the evidence. They make a factual determination that at the outset we're not going to allow any objections, we're going to let everything in. I mean... Yes. And if there was an error, I think that error benefited the Committee of Ten because it permitted in the introduction to evidence certain materials that I would have objected to up and down and, you know, day and night. I did make a continuing objection for the record. The Committee of Ten did not object to those proceedings. I think the regional board afforded them a chance to present everything they possibly could have wanted to present. Looking at the transcript and the record, it seems like it was just a free-for-all. I mean, there's allegations that Bond threatened Mount Oliver to get involved in this case because of retribution or, I mean, things of that sort. That doesn't seem like something that would come in in a real hearing. It doesn't really seem like a real hearing to me. It seems like a community free-for-all, but not really a fact-finding excursion. I think the regional board, and I'm running out of time, but I think the regional board, if they did one thing, they wanted to accommodate the public. This was held in a gymnasium. The bleachers had people. You know, they wanted public hearing. I think they created this process in a way to afford the petitioners as many opportunities as they could have. I think Bond County, in challenging the petition, was at a detriment. But while that was said and done, the regional board still said, as a prior fact, that they didn't show direct educational benefit, which presupposes a comparison. And I think that was within their purview. It might have surprised me that you're not allowed to use the school report cards. I mean, that seems like that would be a thing that would be very valuable, but that's not allowed? There's a statutory provision, and I think that was the wrong case. Wait, report cards was Roxanne was report cards. School report cards. Yeah. I mean, not people report cards, but school report cards. Yeah, it is. You take schools and you get a grade. Your Honor, 7-6, when it was amended, said you could only consider report cards if there's not greater than a 3% disparity in minority low income. They didn't want it to be used, I would imagine, in a way to impact. But there was evidence put in that Mount Olive was a 2022 model school by the International Center for Leadership. I'm not even sure what that means. Yeah, and nobody explained what that means, and yeah, it was let in. But Sorrento was closed, and one thing the board made clear, even the regional superintendent commented, the question of closing an attendance center is not at issue today. It's not something the regional board has purview over. A school gets to close, and that's not what's happening. Even if the detachment occurs, Bond County, their closure would not be impacted of Sorrento. I have a lot more time, Your Honor. I'm just looking for your time. Ms. Farron, rebuttal. A few things. Regarding the class size difference, I reviewed the record a little further during the rebuttal, and in their brief, Bond County acknowledged if this annexation was to happen, and again, this is more school size than class size, but it would increase Mount Olive by 29%, but it would only decrease Bond County by 9%, which does show, I mean, a huge difference on the school size there, which goes towards potentially the bus rides, the extracurriculars, the personalized attention, and knowing teachers. Regarding the bus rides, Dr. Olson on the record did acknowledge that the bus rides were two hours each way. He said that was unfortunate. So it's uncontroverted that these bus rides, these students are on the bus four hours a day, which is about 20% of a student's day. Regarding the expert witness not having specific knowledge about the Bond County and Mount Olive, she did speak on the academic portion, but she has 20 years of experience on small schools, rural schools, annexation, and the effects these schools have. She spoke about the benefit of the class sizes, the increase in class sizes when an annexation occurs, the bus rides. It wasn't her testimony in general, urban versus rural, and nothing specific about Bond County versus Mount Olive? It was in general, but, I mean, Bond County is a bigger school here, and the effect of the closure, yes, we're not talking about reopening Sorrento School District here, but she did talk about the benefits of a smaller school district for these students. He mentioned about the Shepherd case and the Violet case as well. In the Shepherd case, one thing to note was they, both sides in that case, admitted that the schools were very similar on there. The main issue in that case was a waste management company who had, the kids got sick because of a waste management company, who later came out and said, we will not have this increased traffic during school hours. We will not have this waste being processed during the school day. So the issue was resolved that there was agreement between both parties that the schools were very similar there. So the significant direct educational benefit was not looked at fully because they admitted the schools were similar. However, they also stated that it should be broadly interpreted. And Borough, in Borough, again, they mentioned that it should be broadly interpreted, and they gave those nine factors of broad interpretation, including parental preference being taken into consideration. It can't be the sole factor, but it should be taken into consideration when deciding that annexation should occur. And then the Violet case was brought up a little bit as well. One thing I did want to note about the Violet case was it was similar to this case, very similar, in that, and Ron brought this up as well, which I know is an unpublished decision. The finding of facts, you need to be able to know why a decision was made, what basis it was made on. Here we have a lot of hypotheticals on why this was proven or not proven because there was no finding of fact. I know opposing counsel started bringing up the funding issue, which was not even addressed in this order and was not brought up on appeal. But we can't, so we can say it was not taken into effect because, into consideration because it wasn't on the decision. But unfortunately, it's difficult to state that. I also did want to point out about the funds because he did mention the loss in revenue. There was nothing at the hearing that stated how the loss in revenue would have been calculated or if it would, it just said they would lose the tax revenue. It didn't say take into consideration the students, the cost of teaching per student, how much that would decrease as well, which could really lower that number that they gave because the cost of teaching that many students would decrease the transportation costs. And in Carver, they did state that the loss of revenue is not a determinative factor in a detachment proceeding. Are there any questions? Of course. Was there any evidence presented at the hearing by either side on if either school district was going to hire more teachers to absorb the new, the number of students going into either Bond or Mount Olive? I do not recall anything on the record stating definite that more teachers would be hired. I do believe, yeah, I don't believe there was anything there. Opposing counsel said the student-to-teacher ratio is going to change at Mount Olive no matter what because you've got all these students coming to Mount Olive, so even if they had a better student-to-teacher ratio, that's going to change with the new students in. But I didn't hear any, I don't recall seeing anything on the record, maybe there was, but I don't recall either school saying they were hiring more teachers to absorb the students. I mean, it is still only, I mean, it's a 29% increase there, but it's still a 9% decrease at Bond County. Showing the school sizes, there is a difference on these 100-some-odd children transferring from one school or the other where Mount Olive is a smaller school. Thank you. Justice McCain, any other questions? No questions. All right, thank you. Appreciate your arguments. We've considered the briefs and your arguments today. We'll take the matter under advisement and issue a decision in due course.